IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| DARRIN Z. BURTON, ) | Case No. 19-12225-BFK |
| ) | Chapter 13 |
| Debtor, ) | |
| _____) | |

**MOTION TO DISMISS CHAPTER 13 CASE WITH PREJUDICE**

COMES NOW Michael and Margarita Mendoza ("the Mendozas"), by counsel, and state the following in support of their Motion to Dismiss the present Chapter 13 case filed by the Debtor, Darrin Z. Burton ("Burton" or "Debtor").

**FACTS**

1. On July 5, 2019, Debtor filed his Chapter 13 bankruptcy petition in the Eastern District of Virginia, Alexandria Division, Case No. 19-12225-BFK.

2. Debtor has filed eight bankruptcies in this Court since 2008, including this case.

| Case Number | Chapter | Duration of Case | Net Receipts | Payments to Unsecured |
|---|---|---|---|---|
| Case No. 08-15058-RGM | 7 | August 22, 2008 – December 9, 2008 | N/A | $0.00 |
| Case No. 09-18157-SSM | 13 | October 5, 2009 – May 19, 2010 | $2,540.00 | $0.00 |
| Case No. 10-14302-RGM | 13 | May 25, 2010 – October 31, 2012 | $32,600.00 | $1,690.30 |
| Case No. 13-12858-BFK | 13 | June 19, 2013 – April 30, 2014 | $10,080.00 | $0.00 |
| Case No. 14-14585-BFK | 13 | December 10, 2014 – August 18, 2016 | $9,838.48 | $0.00 |
| Case No. 16-13137-RGM | 7 | September 13, 2016 – January 9, 2017 | N/A | $0.00 |

Jonathan B. Vivona, Esquire
601 King Street, Suite 400
Alexandria, Virginia 22314
Telephone Number: (703) 739-1353
vivonalaw@gmail.com
*Counsel for Michael A. Mendoza and Margarita Mendoza*

| Case No. 18-12462-KHK | 13 | July 14, 2018 – June 13, 2019 | $6,049.44 | $0.00 |

3. In Debtor's most recent Chapter 13 case which was pending for twelve months, there was a sum total of $6,049.44 in disbursements, none of which was paid to unsecured creditors. Instead $5,144.72 went to administrative expenses and $904.72 went to one secured creditor. All of debtor's Chapter 13 cases, with the exception of one, follow this pattern. All have ended in dismissal. See attached Chapter 13 Final Reports marked Exhibit "A".

4. In his most effective case, Debtor paid $32,600.00 into the Chapter 13 Plan, $1,690.30 of which went to unsecured claimants. He now purports that he will be able to pay $185,950.00 into the present plan as well as make required mortgage payments of $2,335.50 per month going forward.

5. Debtor's extensive history and recent history in bankruptcy demonstrate that this is not possible, and that creditors can only expect further undue delay in collection of their claims.

6. In debtor's last case he only was able to make payments to the trustee in the total amount of $10,106.16 over the twelve month period he was in bankruptcy, for an average of $842.18 per month. Though his household income has not changed significantly from then to now, Debtor claims he can now make payments of $3,125.00 per month for the remainder of the Plan.

**DEBTOR'S INACCURATE SCHEDULES IN PRIOR FILINGS**

7. In his Chapter 13 case immediately preceding the present case, Case No. 18-12462-KHK, Burton did list on his schedules the real property located at 18 Mill Springs Drive, Fredericksburg, VA 22406. However, he valued the property at $0.00 and did not list the claim of the secured creditor, Carrington Mortgage Services. Further he did not provide for either surrender of the property or payment of the arrearages in his previous Chapter 13 case, nor did he provide

for any treatment of this claim in his confirmed Amended Chapter 13 Plan in that case. See attached marked Exhibit "B".

8. In the present case Carrington is listed as having a secured claim of $524,500.00 and the Amended Chapter 13 Plan estimates arrearages of $75,000.00. This claim was neither listed nor provided for in any capacity in Debtor's prior case.

9. Debtor also did not list the Mendozas as creditors in his prior case nor did he list the Lease as an executory contract in Schedule G of his bankruptcy filing.

## UNDERESTIMATION OF THE MENDOZAS' CLAIM

10. Debtor underestimates the Mendozas' claim. In addition to rent that Debtor failed to pay to the Mendozas, Burton and his spouse, Stephani Burton caused approximately $16,000.00 of damage to their property. The Mendozas have had to spend significant funds to return the Property to rentable condition, as well as lost rental income because the property was not ready for new tenants while the damage was being fixed.

## ARGUMENT

Debtor has not proceeded in good faith in his many years in bankruptcy and his reorganization in this case is not feasible. Burton has perpetually utilized the bankruptcy process to delay creditors while not performing on proposed plans. He has failed to pay even secured claims, let alone unsecured creditors, who have received $1,690.30 in all of his cases combined. Burton has obtained two Chapter 7 discharges since 2008 and is no doubt aiming for a third. He is not eligible for a discharge in the present case, nor was he eligible in his prior Chapter 13 filing dismissed weeks before this case, in which unsecured creditors received zero payment and were delayed nearly a year.

Due to this pattern of abuse, unsecured creditors are not being provided the treatment to which they are entitled under the Bankruptcy Code. Creditors are continually relinquishing precious time during which they could collect on debts that are not subject to discharge in either a Chapter 7 or Chapter 13, while Debtor counts the days before he can become eligible for a third Chapter 7 discharge. Unsecured creditors are unlikely to obtain any return if Burton remains in bankruptcy.

### I.   **The Debtor's Bankruptcy Case Has Not Been Filed in Good Faith**

To determine whether a chapter 13 petition and plan are filed in good faith, the Fourth Circuit applies a totality of the circumstances test. *Deans v. O'Donnell*, 692 F.2d at 972 and expanded in *In re Solomon*, 67 F.3d 1128, 1134 (4th Cir. 1995), and *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986). The factors to be considered include (but are not limited to): the percentage of proposed repayment, the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor. The inquiry is to determine whether there has been "an abuse of the provisions, purpose or spirit" of Chapter 13. *Id*. The Debtors bear the burden of proof on the issues of good faith and disposable income. *In re Brandland*, 570 B.R. 203, 212 (Bankr E.D. Va. 2017); *In re Cole*, 548 B.R.132, 141 (Bankr. E.D. Va. 2016); *In re Colston*, 539 B.R. 738, 746 (Bankr. W.D. Va. 2015); *In re Daniels* (Bankr. E.D. Va., 2018).

While the debtor's Plan proposes payments of $3,125.00 per month for the rest of the Plan, the vast majority of the funds will be paid to secured arrearages and priority claims. The percentage proposed repayment to unsecured creditors is 25%. More importantly, their claims are not going to be paid any amount until year four or five of the Plan. Given debtor's track record in

his prior bankruptcy cases, it is highly unlikely that he makes it this far along in the Plan. Should Burton cease making payments as he has numerous times in the past, these creditors will have lost the ability to collect on their claims during the period in which Burton is ineligible for a discharge. Unsecured creditors are significantly damaged by this delay as Burton will inch closer to becoming eligible for a discharge in Chapter 7, at which time unsecured creditors will almost assuredly receive nothing.

Under the Bankruptcy Code creditors must be provided fair and equitable treatment. As a result, debtors are prohibited from receiving multiple discharges in bankruptcy within a given number of years. Burton should not be able to frustrate the purpose of this prohibition by using a series of Chapter 13 filings to remain perpetually resistant to claims of his unsecured creditors until he ultimately becomes eligible for a Chapter 7 discharge. By doing so, Debtor would be doing precisely what the good faith requirement seeks to prevent, which is an "'abuse of the provisions, purpose or spirit' of Chapter 13." *In re Daniels*, Case No. 17-14285-BFK (Bankr. E.D. Va., 2018) at 6 *citing Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986) and *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982).

Furthermore, an examination of Debtor's prior cases demonstrates two additional indicia of bad faith. First, Debtor was less than forthright in representing material facts regarding the mortgage claim against his Property, which was listed for the duration of his prior case as zero but is now listed in this case at $524,500.00 with an arrearage of $75,000.00. This is an omission of particular significance in a Chapter 13 case as the Debtor's ability to pay arrearages on secured claims is vital to remaining in Chapter 13 bankruptcy. In addition, the $75,000.00 in arrearages which are included in the present case (but not in the previous one) will soak up the lion's share of plan funding.

Secondly, Debtor has demonstrated that he will use the bankruptcy process solely as a means of delaying his creditors while paying them as little as humanly possible. This is made clear by the fact that Debtor's plan payments are drastically different in his last two cases in spite of the fact that his household income has remained the same. Debtor was supposed to have contributed all of his monthly disposable income into his Chapter 13 plan in his prior case, yet paid a meager $842.18 per month. Now that he is required to pay his mortgage arrearages in order to get a plan approved, Burton claims $3,125.00 per month is available to pay creditors. It would behoove the creditors not to ask the question how all this money has suddenly emerged shortly after his prior case was dismissed.

Finally, Debtor has not acted in good faith with respect to the Mendozas. Whether behind on rent or not, there was no reason for the Burtons to leave the Mendozas' house in terrible condition upon vacating the Property. Debtor demonstrates no accountability to others because he has been successful in manipulating the bankruptcy process to avoid facing consequences for his actions.

## II.  Reorganization by the Debtor is Not Feasible

Burton proposes his most ambitious plan yet in his sixth Chapter 13 filing, and yet he has routinely failed to execute lesser plans. As discussed above, Burton's employment situation and financial circumstances have not changed, yet his Amended Plan proposes payment of $3,125.00 per month for the rest of the case. Burton only made payments of $841.18 per month in his prior case which was dismissed only weeks prior to the present case. There is no reason to believe he could successfully pay a far greater amount now. Furthermore, even if he makes it to year 4 or 5 of the Plan when it comes time to pay unsecured claims, he will have no incentive to pay those claims with no possibility of receiving a discharge in this case.

## **CONCLUSION**

Burton is evading provisions of the Bankruptcy Code that limit a debtor's right to a discharge, which are in place to ensure fairness to creditors. This purpose would be clearly frustrated if Burton is allowed to delay creditors with yet another bad faith Chapter 13 filing in which he has no feasible plan. Debtor's numerous filings, meager disbursements to unsecured creditors, failure to list his major secured creditor in his prior case and his actions in damaging the Mendoza's property demonstrate his bad faith. They also demonstrate a belief that as long as he has the option of bankruptcy available, meeting his obligations to creditors is optional. Finally, the amended plan is not feasible. Debtor has attempted far less ambitious plans in the past and has never come close to successfully completing one.

WHEREFORE, Michael and Margarita Mendoza, by counsel, request that this Honorable Court dismiss the Debtor, Darrin Z. Burton's Chapter 13 case with prejudice.

>MICHAEL MENDOZA
>MARGARITA MENDOZA
>By Counsel

JONATHAN B. VIVONA, PLC

\_\_/s/ Jonathan B. Vivona_____
JONATHAN B. VIVONA, ESQUIRE
Virginia State Bar No. 82762
601 King Street, Suite 400
Alexandria, Virginia 22314
Telephone Number: (703) 739-1353
Fax Number: (703) 337-0490
vivonalaw@gmail.com
*Counsel for Michael and Margarita Mendoza*

### *CERTIFICATE OF SERVICE*

       I hereby certify that on the 24th day of October, 2019 a true copy of the foregoing Motion to Dismiss was served electronically pursuant to this Court's CM/ECF procedures on: Thomas P. Gorman, Trustee and Earl J. Oberbauer, Jr., Esquire, and sent via first class mail, postage pre-paid to: Darrin Z. Burton, 19 Glenview Court, Stafford, VA 22554.

                                                      /s/ Jonathan B. Vivona
                                                  JONATHAN B. VIVONA